Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
matthew.rollin@sriplaw.com

*Counsel for Plaintiff*
*Viral DRM LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRAL DRM LLC, | CASE NO.: 3:24-cv-00739-JSC |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE** |
| v. | |
| YURII PROKOPENKO, | |
| Defendant. | |

Plaintiff VIRAL DRM LLC, ("Viral DRM"), by and through its undersigned counsel, hereby submits its Response to the Court's Order to Show Cause filed on December 9, 2024.

The Order to Show Cause questions plaintiff's standing to sue under the Copyright Act. Addressing the agreements between plaintiff and videographers submitted to the Court, the Court observed:

> The Agreement here gives Viral DRM the "exclusive agency right to manage and administer any content." (Dkt. No. 35-3 at ¶ 1.) Managing and administering content is not among the exhaustive list of exclusive rights which confer ownership under 17 U.S.C. § 106. The Agreement provision giving Viral DRM "the exclusive agency rights to display, store, transmit, and distribute Works *as needed to fulfill obligations set forth in this agreement*," also does not confer exclusive ownership rights. (Dkt. No. 35-3 at ¶ 1 (emphasis added).) Giving Viral DRM the rights necessary to enforce the videographer's copyright, is not the same as the exclusive right to "authorize third parties to reproduce, distribute, and display the photographs" required to have standing to bring a copyright infringement action. *Minden*, 795 F.3d at 1005; *see also*

*Silvers*, 402 F.3d at 884 ("The right to sue for an accrued claim for infringement is not an exclusive right under § 106."). Unlike the agreement in *Minden*, the Agreement does not give Viral DRM the exclusive right to authorize third parties to reproduce, distribute, and display the copyrighted video.

Accordingly, Viral DRM is ORDERED TO SHOW CAUSE as to how it has standing to bring the copyright infringement claims at issue here including its standing to bring claims under 17 U.S.C. §§ 512(f), 1202(a), (b).

For the reasons set forth below and in the accompanying declarations, Viral DRM respectfully suggests that Viral DRM has standing, the Court should vacate the Order to Show Cause, and the Court should issue an Order Granting Viral DRM's Motion for Final Default. Alternatively, if the Court determines that the rights granted in the agreements with Viral DRM were insufficient to give Viral DRM standing, then each videographer has agreed to either be added as a nominal plaintiff in the above-captioned matter.

**Background**

Viral DRM previously advised this Court that Viral DRM and Live Storms Media, Inc. ("LSM"), both collaborated in syndicating and distributing award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. Since this case was filed, Viral DRM's status as a partner with LSM in the syndication and distribution business underwent a change.

Plaintiff previously filed with the Court copies of an Exclusive Copyright Management Agreement between Viral DRM and the videographers whose work is at issue in this case. Those agreements were signed in 2022. It was those agreements that this Court reviewed and after it reviewed those agreements the Court issued the Order to Show Cause.

**Viral DRM Videographers Who are also Clients of LSM**

At the time the Exclusive Copyright Management Agreements were signed Viral DRM and LSM operated their businesses in a cooperative fashion. However, since early 2024 there have been disagreements between the owners as to the management of the businesses. Both owners—Brandon Clement, the manager of Viral DRM, and Brett Adair, the manager of LSM—support their creators and abhor the types of infringement that occurred here, but their disagreements eventually resulted in the companies entering into an assignment whereby Mr. Adair assigned his 50% ownership interest

in Viral DRM to Mr. Clement, and LSM agreed to continue to participate and assist Viral DRM with all matters relating to intellectual property protection. (Declaration of Matthew Rollin ¶ 3; Ex. 1).

The goals of the two companies remain unchanged. Those goals include obtaining judgments on default for infringement such as the one pending before this Court by motion. The videographers themselves have been consulted and all the videographers at issue signed declarations that have been filed with the Court.

The videographers agreed that if they were an LSM client, "they exclusively licensed the right to distribute copies of the work at issue in this case to LSM for purposes of distributing [their] work to television networks, local affiliates, online news media and other media outlets." That understanding reflects that the videographers granted an exclusive license to LSM for purposes of distribution of their videos.

The videographers' declarations also indicate that they "understood that by granting 'exclusive agency rights to manage and administer' [their] content to Viral DRM "in an effort to enforce the copyrights in and to the Works," and by granting "exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill [Viral DRM's] obligations," that [they were] granting Viral DRM, on an exclusive basis, the rights Viral DRM needed in order to register [their] copyright in the work at issue, bring lawsuits on [their] behalf [] for infringement of [their] copyright in the work at issue, and negotiate settlements on [their] behalf for the work at issue." The videographers who were also LSM clients all swore that they "understood that [their] agreement with Viral DRM and the exclusive rights granted Viral DRM would not conflict with the exclusive rights [] granted to LSM to distribute copies of the work at issue in this case to television networks, local affiliates, online news media and other media outlets."

**Viral DRM Videographers Who are Independent of LSM**

Several videographers have chosen to retain their distribution rights rather than using LSM. Each of these videographers retain the exclusive right to distribute copies of the works at issue in this case for the purpose of distributing their works to television networks, local affiliates, online news media and other media outlets.

The videographers' declarations also indicate that they "understood that by granting 'exclusive agency rights to manage and administer' [their] content to Viral DRM "in an effort to enforce the copyrights in and to the Works," and by granting "exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill [Viral DRM's] obligations," that [they were] granting Viral DRM, on an exclusive basis, the rights Viral DRM needed in order to register [their] copyright in the work at issue, bring lawsuits on [their] behalf [] for infringement of [their] copyright in the work at issue, and negotiate settlements on [their] behalf for the work at issue." The videographers who all swore that they "understood that [their] agreement with Viral DRM and the exclusive rights granted Viral DRM would not conflict with the exclusive rights retain[ed] [by them] to license and distribute copies of the work at issue in this case.

### All Videographers

Finally, **all** the declarations of the videographers filed with the Court agree that if this "Court determines that the rights [] granted in the agreement with Viral DRM were insufficient to give Viral DRM standing then [they] agree to either be added as a plaintiff in this case or to be substituted in place of Viral DRM as the plaintiff in this case."

### The Declarations Combined with the Agreements Demonstrate Plaintiff Had Standing When the Case was Filed

"Representation Agreements" such as the agreements at issue filed with the Court when read in light of the declarations of the videographers filed herewith, and understood against the history of the cooperation between Viral DRM and LSM, demonstrate that Viral DRM has standing to sue.

The Copyright Act's exclusive rights are fivefold: 1) the right to reproduce in copies; 2) the right to prepare derivative works; 3) the right to distribute copies; 4) the right to publicly perform; and 5) the right to publicly display. 17 U.S.C. § 106.

The grant of "exclusive agency rights" in the agreements between videographers and Viral DRM are sufficient to appoint Viral as exclusive owner of at least one of the § 106 rights and provide Viral with standing to sue. In order to fulfill its responsibility to "manage and administer any content submitted by Content Creator to VDRM (the "Works")," Viral must be empowered to

"display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement."

The right to "publicly display" is right number five. The right to "transmit" is the right to publicly perform in right number four. The right to distribute is right number three. The right to "store" requires making a digital copy which is right number one. And while the agreement says these four rights are granted as exclusive, Viral only needs one of these rights for standing. One right is enough. See, e.g., *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 267 (S.D.N.Y. 2014)(standing to sue found where the plaintiff "DRK agreed to act as Bean's and French's 'sole and exclusive agent with respect to the sale or leasing of the photographs or transparencies which [Bean or French had] delivered to [DRK] and shall deliver to [DRK] in the future.'")

In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, the court held that the "Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned 'exclusive right' by authorizing the owner to the transfer his or her share, 'in whole or in party,' to someone else." 795 F.3d 997, 1002 (N.D. Cal. 2014). In *Minden*, the defendant argued that because Minden was not granted an exclusive license for "reproduction, distribution and display of the photographs" that Minden did not have standing to bring a lawsuit. *Id*. at 1003. The court disagreed. Reading the agency agreement, the court determined that the agreement gave Minden the right "to reproduce, and to authorize the reproduction of, the copyrighted photographs." *Id*.

Since the decision in *Minden Pictures, Inc.*, the Central District in *Scott v. Walt Disney Co.*, No. 2:20-cv-09709-SB-SK, 2021. U.S. Dist. LEXIS 78863 at *4 (C.D. Cal. March 30, 2021) has observed that the Ninth Circuit has held that any challenge to Plaintiff's standing is statutory in nature rather than Article III standing. In fact, the Ninth Circuit has instructed that a motion to dismiss "asserting that a plaintiff 'lack[s] standing under the Copyright Act to bring an infringement suit' should be 'brought under Rule 12(b)(6) for failure to state a claim rather than under Rule 12(b)(1) for lack of jurisdiction." *Id*. at *5; quoting *Minden Pictures, Inc. v. John Wiley & Sons*, Inc., 795 F.3d 997, 1001 (9th Cir. 2015).

Furthermore, Viral DRM has brought four claims: 1) Copyright Infringement; 2) Misrepresentation and Fraud; 3) Removal or Alternation of Copyright Management Information; and

4) Falsification of Copyright Management Information. The Court has subject matter jurisdiction over Claims Two, Three, and Four, irrespective of Claim One. However, based on the foregoing, Viral DRM believes that the Court has subject matter jurisdiction for all four claims.

### Alternative to Dismissal: Joinder of Videographers as Nominal Plaintiffs

All the videographers agree that if this Court were to dismiss this case for lack of standing it would work an injustice upon them and therefore, they agree to join as nominal plaintiffs in that circumstance. Therefore, instead of dismissal, plaintiff should be permitted to add the videographers as nominal plaintiffs. See *Stewart v. Balt. & O. R. Co.*, 168 U.S. 445, 449-50 (1897) (distinguishing "the real party in interest" from the "nominal plaintiff" and explaining that the real party in interest is "the party for whose benefit the recovery is sought" and noting that courts "will see that the damages awarded pass to such party.").

Adding the videographers will cause no substantive change to the claims and therefore should occasion no delays. If the Court determines that this is necessary, plaintiff seeks leave to add the videographers as nominal plaintiffs.

### Conclusion.

Based on the foregoing, it is Viral DRM's contention that it has received the proper rights to grant Viral DRM the standing to file lawsuits on behalf of the individual videographers. However, if the Court disagrees, and determines that the rights granted in the agreements with Viral DRM were insufficient to give Viral DRM standing, then each videographer has agreed to either be added as a nominal plaintiff in the above-captioned matter.

DATED:  January 21, 2025            Respectfully submitted,

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Viral DRM LLC*